UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――X
AMANDA U. AJULUCHUKU-LEVY

            Plaintiff,

      -against-                        **OPINION AND ORDER**
                                         **08 CV 1752 (SJF)(AKT)**
MICHAEL F. SCHLEIFER, CPA and ACCOUNTING
FIRM OF MICHAEL F. SCHLEIFER, CPA,

            Defendants.
―――――――――――――――――――――――X
FEUERSTEIN, J.

On April 23, 2009, plaintiff Amanda U. Ajuluchuku-Levy ("Plaintiff") commenced this action against Michael F. Schleifer, CPA, and the Accounting Firm of Michael F. Schleifer, CPA (together, "Defendants"), asserting violations of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12182, 12203 (the "ADA"), and Title II of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000a, *et seq.* (Compl. §§ C, D.) Plaintiff also asserts a claim of intentional infliction of emotional distress. (Id. § D.) Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and to impose sanctions upon Plaintiff pursuant to Rule 11(c) of the Federal Rules of Civil Procedure. For the reasons set forth herein, Defendants' motion is granted in part and denied in part.

1

I. Factual Allegations[1]

From January 1987 to May 1990, Plaintiff attended Hunter College of the City University of New York, studying towards a Bachelor's of Science degree in Accounting. (Compl. § A ¶¶ 1, 3.) In January 1987, Plaintiff enrolled in Principles of Accounting I, taught by Mr. Schleifer. (Compl. § A ¶ 1.) Plaintiff alleges that when she attempted to withdraw from the class, Mr. Schleifer sexually harassed and intimidated her by stating: "[C]ome see me at my office. If you come, I will guarantee you a passing grade. I desire to see your breasts." (Compl. § A ¶¶ 1, 2.) Plaintiff neither went to his office nor dropped the class. (Compl. § A ¶ 2.)

In December 1989, Plaintiff enrolled in Mr. Schleifer's Auditing class to complete her course of studies. (Compl. § A ¶ 3.) Plaintiff alleges that "[o]wing to the fact that [she] did not return Mr. Schleifer's sexual advances, Defendant issued [her] a failing grade" in the class, preventing Plaintiff from graduating. (Compl. § A ¶ 3.) At that time, Plaintiff reported the sexual harassment to the Dean of Students and her Accounting Advisor. (Compl. § A ¶ 4.) Although Plaintiff earned a "C" grade in another professor's Auditing class the next semester, Mr. Schleifer and her Accounting Advisor allegedly refused to grant her a Bachelor's of Science degree in Accounting due to her previous failing grade. (Compl. § A ¶ 3.)

Thereafter, Plaintiff had no contact with Mr. Schleifer until June 2001 when he informed Plaintiff of the death of another professor. (Compl. § A ¶ 5.) At that time, Mr. Schleifer

---

[1] As is required on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in the complaint, though disputed by Defendants, are accepted to be true for the purposes of this motion, and all reasonable inferences are drawn therefrom in favor of Plaintiff. They do not constitute findings of fact by this Court.

2

allegedly apologized and admitted that giving Plaintiff a failing grade was a mistake. (Compl. § A ¶ 5.) However, he did not alter the grade, and made the same sexual advances towards Plaintiff as he did in January 1987. (Compl. § A ¶ 5.)

Plaintiff's final encounter with Mr. Schleifer occurred in March 2008, when Plaintiff requested that Mr. Schleifer change her failing grade and help her with her estranged husband and kidnaped son. (Compl. § A ¶ 7.) Mr. Schleifer allegedly agreed to change Plaintiff's grade and assist her after the tax season had passed, but then reneged on his promise by email on March 31, 2008. (Compl. § A ¶¶ 6, 7.)

II.     Standard of Review on Motions to Dismiss

   A.    Plaintiff's *Pro Se* Status

As Plaintiff is proceeding *pro se*, her submissions "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). Nevertheless, *pro se* plaintiffs must follow the rules of procedure governing pleading and dismissal. See Traguth v. Zuck, 710 F.2d 90, 92 (2d Cir.1983).

3

B.  Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson, 551 U.S. at 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081. See also Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008). However, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S. Ct.1955, 167 L. Ed. 2d 929). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'" Ashcroft, --- U.S. ----, 129 S. Ct. at 1949, 173 L. Ed. 2d 868 (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, --- U .S. ----, 129 S. Ct. at 1949, 173 L. Ed. 2d 868.

In deciding a motion to dismiss, the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), *cert. denied*, 128 S. Ct. 2964, 171 L. Ed. 2d 906 (2008) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir.

2002)). However, this standard "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, --- U.S. ----, 129 S. Ct. at 1949, 173 L. Ed. 2d 868. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950.

In determining a motion to dismiss pursuant to Rule 12(b)(6), the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F.3d at 152-53.

III. Analysis

A. Americans with Disabilities Act

Plaintiff alleges that Defendants have violated her rights pursuant to Title III of the Americans with Disabilities Act of 1990 ("Title III"), 42 U.S.C. §§ 12182, 12203.

1. Plaintiff's Disability Discrimination Claim

Title III "proscribes discrimination against the disabled in public accommodations." Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir.), corrected, 511 F.3d 238 (2d Cir. 2004). Specifically, Title III prohibits discrimination upon the basis of disability "in the full and

equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To establish a prima facie violation of the ADA, a plaintiff must demonstrate "(1) that she is disabled within the meaning of the ADA, (2) that defendants own, lease, or operate a place of public accommodation, and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008).

Plaintiff alleges that she has "a permanent physical disability because [she] fell down when [she] was two years old and injured [her] head." (Compl. § B.) Even assuming Plaintiff is disabled within the meaning of the ADA, see Weixel v. Board of Educ. of City of New York, 287 F.3d 138 (2d Cir. 2002) (setting forth the standard used by the Second Circuit to determine if a plaintiff suffers from a disability within the meaning of the ADA), and that Plaintiff is entitled to assert a cause of action against Defendants, see Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98 (2d Cir. 2001) (holding that a medical student must assert a cause of action pursuant to the ADA against a governmental entity, not professors in their individual capacities), she has nevertheless failed to allege that the Defendants discriminated against her because of her disability. Although Plaintiff contends that Mr. Schliefer was "aware of [her] disability," (Compl. § A ¶ 12), the allegations contained in her Complaint assert that Plaintiff was issued a failing grade and denied an accounting degree due to her rejection of Mr. Schliefer's sexual advances, not her disability, and therefore, Plaintiff has failed to demonstrate a prima facie violation of the ADA. See, e.g., O'Connor v. College of Saint Rose, No. 3:04-CV-0318, 2005 WL 2739106 (N.D.N.Y. Oct. 25, 2005) (dismissing disability discrimination claims because

"[p]laintiff offer[ed] insufficient evidence upon which it reasonably [could] be concluded that he received a low grade because of his disability").

Moreover, in her Complaint, Plaintiff seeks "a B.S. in Accounting and $9,000,000,000 (nine trillion dollars) as compensatory and punitive damages." (Compl. § G.) However, "Title III provides private parties with the right to injunctive relief to stop or prevent disability discrimination in a place of public accommodation, but it provides no right to monetary damages for past discrimination." Bernas v. Cablevision Systems Corp., No. 06-0250-CV, 215 Fed.Appx. 64, 67-68 (2nd Cir. Jan. 30, 2007). See also Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 86 (2d Cir. 2004) (noting that a "private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages"). Additionally, because Title III only provides the same remedies that are available pursuant to Title II of the Civil Rights Act of 1964, Plaintiff is only entitled to seek "*preventive* relief, including an application for a permanent or temporary injunction, restraining order, or other order." 42 U.S.C. § 2000a-(3) (emphasis added). See also Fiorica v. University of Rochester, School of Nursing, No. 07-CV-6232T, 2008 WL 907371, at *3 (W.D.N.Y. Mar. 31, 2008) (holding that the injunctive relief sought by the plaintiff (reinstatement to a nursing program) was not preventive relief, and therefore, not available pursuant to Title III of the ADA). As the damages sought by Plaintiff are not remedies available pursuant to Title III of the ADA, Plaintiff has failed to state a claim upon which relief may be granted, see id., and accordingly, this branch of Defendant's motion to dismiss is granted.

2. Plaintiff's Retaliation Claim

42 U.S.C. § 12203 prohibits retaliation and intimidation against any person who has opposed a discriminatory practice or made a claim of discrimination upon the basis of disability. 42 U.S.C. § 12203. To establish a prima facie case of retaliation, a plaintiff must establish that: (1) the plaintiff was engaged in an activity protected by the ADA, (2) the defendant was aware of that activity, (3) plaintiff suffered an adverse action, and (4) there existed a causal connection between the protected activity and the adverse action. Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999).

Given a most liberal reading, Plaintiff's Complaint contains allegations that she suffered from the following adverse actions: (1) receiving a failing grade in an auditing class (Compl. § A ¶ 3); (2) being denied a bachelor's degree in accounting in December 1989 (id. § A ¶ 4); (3) being terminated from employment at a law firm in 1989 (id. § A ¶ 9); and (4) being expelled from the University of Massachusetts and the Southern New England School of Law in 2003 (id. § A ¶ 11). However, the only possibly protected activity alleged by Plaintiff is an accusation regarding Mr. Schleifer's sexual advances made to the Dean of Students in December 1989. (Id. § A ¶ 4.) Nevertheless, this accusation concerned only Mr. Schleifer's alleged sexual harassment of Plaintiff, not any perceived violation of the ADA. See Fiorica, 2008 WL 907371, at *4 (denying plaintiff's motion to amend because there was "no indication that adverse action was taken against her by the defendant because she opposed any act or practice made unlawful by the ADA, . . . made a charge under the ADA, or participated in any manner in any proceeding or investigation under the ADA").

Moreover, even if Plaintiff's accusation to the Dean of Students was a protected activity, Plaintiff has failed to allege a causal connection between her protected activity and any of the adverse actions. Of the aforementioned actions, the first two (2) occurred before Plaintiff complained of the harassment, (Compl. §§ A ¶ 3, 4), and the last occurred over thirteen (13) years after the accusation. See Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d Cir. 2001) (noting that ("[t]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action") (internal quotations and citations omitted). Moreover, although Plaintiff's "assignment [at a law firm] ended abruptly despite the fact that she had been working there for five years" after she accused Mr. Schleifer of sexual harassment, (Compl. § A ¶ 9), Plaintiff has failed to allege that Mr. Schliefer, her professor, either directly or indirectly caused her termination, or that her employer had knowledge of her accusations. See Manoharan v. Columbia University College of Physicians & Surgeons, 842 F.2d 590, 594 (2d Cir. 1988) (noting that the plaintiff must demonstrate the retaliatory motive was a "but for" cause of the adverse action). As Plaintiff has not alleged that she suffered adverse actions for engaging in an activity protected by the ADA, this branch of Defendants' motion to dismiss is granted.

B.   Civil Rights Act

Plaintiff alleges that Defendants discriminated against her in violation of Title II of the Civil Rights Act of 1964. (Compl. § D ¶ b.) Title II prohibits discrimination upon the basis of race, color, religion, or national origin in the provision of goods, services, facilities, privileges,

9

advantages, and accommodations by any place of public accommodation. 42 U.S.C. § 2000a. Plaintiff has failed to plead any facts indicating that any such discrimination occurred, and as such, this branch of Defendant's motion to dismiss is granted. See Rogers v. New York City Bd. of Elections, 988 F.Supp. 409, 412 (S.D.N.Y. 1997) ("The Civil Rights Act is not intended to provide a universal remedy for all the unfairnesses of life; its exclusive concern is with discrimination based on the grounds it enumerates.") (citing Seidenberg v. McSorleys' Old Ale House, Inc., 317 F.Supp. 593, 595 (S.D.N.Y.1970)).

C. Intentional Infliction of Emotional Distress

Plaintiff asserts a claim for intentional infliction of emotional distress, alleging that Mr. Schliefer's advances caused her to suffer "sexual harassment, memory loss (amnesia), discrimination, obsession, economic hardship, homelessness, terrorism, failing grade, disappointment, wrongful terminations, refusal to hire, humiliation, embarrassment, confusion, [and] vertigo, as emotional distress." (Compl. § F.) To establish a claim for intentional infliction of emotional distress under New York law, a plaintiff must demonstrate: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir.2001); see also Bender v. City of New York, 78 F.3d 787, 790 (2d Cir.1996). "[T]he standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy.'" Conboy, 241 F.3d at 258 (quoting Howell v. New York Post Co., 81 N.Y.2d 115, 122, 596

N.Y.S.2d 350, 353, 612 N.E.2d 699 (1993)). Liability may not be imposed unless "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir.1999) (quoting Howell, 81 N.Y.2d at 122, 596 N.Y.S.2d 350, 612 N.E.2d 699). "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." Stuto v. Fleishman, 164 F.3d at 827.

"Typically, the intentional infliction of emotional distress theory has been applied, in sexual harassment cases, where there has been a continuing campaign of verbal and/or physical harassment." Archer v. Economic Opportunity Com'n of Nassau County Inc., 30 F. Supp. 2d 600, 610 (E.D.N.Y. 1998). See also Thanning v.. Gulotta, 898 F. Supp. 134, 140 (E.D.N.Y.1995) (defendant's persistent touching of plaintiff, asking questions about plaintiff's sexual life, and making of homophobic slurs constituted extreme and outrageous conduct required for a claim of intentional infliction of emotional distress); O'Reilly v. Executone of Albany, Inc., 121 A.D.2d 772, 503 N.Y.S.2d 185, 186 (3d Dept 1986) (court declined to dismiss complaint alleging that defendants "repeatedly, intentionally, and maliciously" subjected the plaintiff to "sexual jokes, comments and inquiries, sexually oriented physical contact and gestures, sexually oriented practical jokes, [and] the posting and presence of pornographic pictures"); Collins v. Willcox, Inc., 158 Misc.2d 54, 57, 600 N.Y.S.2d 884 (Sup. Ct. N.Y. Co. 1992) (noting that "when aggregated over time, the continuous nature of the conduct may make it sufficiently outrageous"). However, even given a generous reading, Plaintiff's allegations fall far short of demonstrating extreme and outrageous conduct. In fact, Plaintiff voluntarily contacted

11

Mr. Scheliefer in 2008, despite his alleged actions which she claims caused her emotional distress. See e.g., Ajuluchuku v. Stacey, No. 1:07CV0069, 2008 WL 345616, at *2 (M.D.N.C. Feb. 5, 2008) (finding Plaintiff's claim of intentional infliction of emotional distress to be frivolous and noting Plaintiff's voluntary contact with defendant after the alleged outrageous conduct). While Plaintiff alleges two (2) separate incidents in which Mr. Schliefer made unwelcome sexual advances, her Complaint cannot plausibly be read to assert a "continuing campaign" of verbal abuse. Archer, 30 F. Supp. 2d at 610. See also Lucas v. South Nassau Communities Hosp., 54 F. Supp. 2d 141 (E.D.N.Y. 1998) (holding that a supervisor's alleged touching of employee on two (2) separate occasions did not support claim of intentional infliction of emotional distress). Therefore, this branch of Defendant's motion to dismiss is granted.

D. Leave to Amend

Rule 15(a) (2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Thompson v. Carter, 284 F.3d 411, 419 (2d Cir. 2002) (citing Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)). Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance

of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman, 371 U.S. at 182. However, if amendment would be futile, i.e., if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6), leave to amend may be denied. See Lucente v. International Business Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002). Even giving the Complaint a most generous reading, it is apparent that granting Plaintiff leave to amend would be futile. See Fitzgerald v. First East Seventh St. Tenants Corp., No. 99 Civ. 6051, 1999 WL 675996, at * 1 (S.D.N.Y. Aug. 31, 1999), aff'd, 221 F.3d 362 (2d Cir. 2000) (sua sponte dismissing complaint and denying leave to amend the complaint on the grounds that any such amendment would be futile). Therefore, Plaintiff is not granted leave to amend her Complaint, and her Complaint is dismissed with prejudice.

III.  Defendant's Motion for Sanctions

Defendant's have also moved for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, contending that Plaintiff has filed frivolous pleadings. "Rule 11 sanctions are designed to deter baseless filings." Libaire v. Kaplan, No. 06-1500, 2008 WL 794973, at *11 (E.D.N.Y. Mar. 24, 2008) (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany, 369 F.3d 91, 97 (2d Cir. 2004)). Pursuant to Rule 11, a court may impose sanctions against "an attorney and/or his client when it appears that a pleading has been interposed for any improper

purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." Eastway Const. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985). See also Fed. R. Civ. P. 11(b)-(c). Rule 11 "applies both to represented and pro se litigants." Maduakolam v. Columbia Univ., 866 F.2d 53, 56 (2d Cir.1989). See also Manwani v. Brunelle, No. 95-6080, 1995 WL 732686, at *2 (2d Cir. Dec. 8, 1995) (affirming the district court's imposition of monetary sanctions upon a pro se plaintiff for relitigation of previously litigated claims).

A motion for sanctions pursuant to Rule 11 must be made independently from other motions. Fed. R. Civ P. 11(c)(2). Moreover, "Rule 11 contains a 'safe harbor' provision, which requires that, where sanctions are initiated by motion of a party, the motion is to be served on the allegedly offending party twenty-one (21) days before it is filed with the court." Libaire, 2008 WL 794973, at *12. Compliance with the safe harbor provision is mandatory, and failure to do so will result in denial of the motion for sanctions. Barash v. Ford Motor Credit Corp. No. 06-CV-6497, 2007 WL 1791656, at *7 (E.D.N.Y. Jun. 20, 2007). See also Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1328 (2d Cir. 1995) (reversing imposition of sanctions against plaintiff because defendant "did not submit the sanction request separately from all other requests, and there is no evidence in the record indicating that [defendant] served [plaintiff] with the request for sanctions 21 days before presenting it to the court). Defendants' motion for sanctions was not submitted separately from their motion to dismiss, and there is no evidence that Defendants complied with Rule 11's safe harbor, and as such, their motion for sanctions is denied.

However, a survey of the dockets of the United States district courts reveals that as of the date of this Order, Plaintiff has commenced two hundred fifty-eight (258) actions in various district courts across the United States. Several district courts have noted that "the 'overwhelming majority' of cases filed by plaintiff have been totally without merit." Ajuluchuku v. Southern New England School of Law, No. CIVA1:05MI0251, 2006 WL 2661232, at *3 (N.D.Ga. Sep. 14, 2006) (citing Ajuluchuku v. Yum! Brand, Inc., Ltd., No. Civ. A. 3:05CV826-H, 2006 WL 1523218, at *2 (W.D.Ky. May 23, 2006)). Moreover, several of Plaintiff's previous actions involved claims pursuant to Title III of the ADA which were dismissed, as in the instant case, because Plaintiff sought monetary relief. See Ajuluchuku v. Southern New England School of Law, No. CIVA1:05MI0251, 2006 WL 2661232, at *3 (N.D.Ga. Sep. 14, 2006) (holding that "the only remedy available under 42 U.S.C. § 12182 is injunctive relief. . . . Thus, plaintiff has . . . failed to state a claim for relief under 42 U.S.C. § 12182"); Ajuluchuku v. Zions Bancorporation, No. 2:05CV906, 2006 WL 2668709, at *2 (D.Utah Sep. 14, 2006) (recommending dismissal of Plaintiff's claim because "[i]t is also well-established that Title III of the ADA does not provide for a private cause of action for damages"); Ajuluchuku v. Yum! Brand, Inc., Ltd., No. Civ. A. 3:05CV826-H, 2006 WL 1523218, at *2 (W.D.Ky. May 23, 2006) ("Here, Plaintiff is seeking only money damages, not injunctive relief. Accordingly, her ADA and Civil Rights Act claims will be dismissed for failure to state a claim."); Ajuluchuku v. Wachovia Corp., No. 3:05CV532-C, 2006 WL 406602, at *2 (W.D.N.C. Feb. 17, 2006) (recommending dismissal of Plaintiff's ADA claim because assuming "that being deprived of a place to sit while she waited for her money otherwise deprived the Plaintiff of her rights under the ADA, she may not maintain an action for damages"). Plaintiff is

therefore advised that she may be subject to monetary or other sanctions if she continues to bring frivolous actions.

IV.     Conclusion

For the reasons stated above, Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED and the Complaint is dismissed with prejudice in its entirety. Defendant's motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure is DENIED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

SANDRA J. FEUERSTEIN
United States District Judge

Dated: December 15, 2009
       Central Islip, New York